Jane ROE I, Jane Roe, II, on behalf of themselves and all others similarly situated, et al., Plaintiffs-Appellants,

v.

ABORTION ABOLITION SOCIETY, et al., Defendants-Appellees.

No. 86–1264.

United States Court of Appeals, Fifth Circuit.

March 9, 1987.

Neil H. Cogan, Storey Hall (SMU), Carla Dowben, Dallas, Tex., for plaintiffs-appellants.

Joe F. Canterbury, Jr., Dallas, Tex., for Abortion Abolition Soc.

Cox & Bader, William D. Cox, Jr., Dallas, Tex., for Henson, Susan.

Locke, Purnell, Boren, Laney & Neely, Robert T. Mowrey, Dallas, Tex., for Lyles.

James B. Harris, Frank Finn, Dallas, Tex., for Doe (private defendants-appellees).

Terrence S. Welch, David J. LaBrec, for City of Dallas.

J. Shelby Sharpe, Fort Worth, Tex., for amicus curiae-The Rutherford Institute, et al.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Three issues are presented: whether the Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3) (1982), authorizes a suit against a class described in the complaint as victims of a conspiracy against persons who do not share the anti-abortion religious beliefs of the conspirators; whether the district court properly dismissed without prejudice a suit against a municipality brought under another provision of that Act, 42 U.S.C. § 1983 (1982), for failure of the city police force, pursuant to municipal practice, to protect those who favor the right to abortion from molestation by those who do not; and whether the settlement of such a claim against another city requires court approval.

## I.

Two anonymous patients; two doctors who provide abortions for women desiring them; the Dallas Medical Ladies Clinic, which operates a clinic providing abortion services; members of the clinic staff; and an organization that provides escort services to the clinic joined in bringing a class action against the Abortion Abolition Society, individual members of the Society, and the cities of Dallas and Mesquite, Texas. The contentions against the Society and its members, whom we refer to collectively as the Society defendants, are founded on 42 U.S.C. § 1985(3). According to the plaintiffs, the Society defendants had entered into a religiously motivated conspiracy to deny the plaintiffs their rights of education, freedom of choice, privacy, and travel. The plaintiffs alleged that members of the Society had threatened, harassed, intimidated, and assaulted them while they were seeking family planning or abortion services. Plaintiffs also appended state tort claims of assault, battery, trespass, defamation, intentional infliction of emotional distress, and interference with business relationships against the Society defendants.

The claims against the two cities, Dallas and Mesquite, were based on 42 U.S.C. § 1983, alleging that both cities, because they do not support abortion, intentionally had failed to provide police protection to the plaintiffs and had allowed the Society defendants to violate the constitutional rights of the plaintiffs by not impeding the unlawful acts of the Society defendants. The plaintiffs alleged in addition that the City of Mesquite had actually "encouraged the Defendants by making statements such as 'keep up the good work.' "

The Society defendants moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the suit for failure to state a claim for which relief can be granted, on the ground that the plaintiffs do not constitute a class protected by § 1985(3). While the motion was pending, the plaintiffs filed a motion to certify "their action as a class action" under Federal Rule of Civil Procedure 23, which is of course a different kind of class determination. The Society defendants filed a motion to stay discovery pending determination of both motions and discovery was stayed save for "facts relevant to certification of the alleged class."

The City of Dallas then filed a brief in opposition to the plaintiffs' motion for class certification on the ground that the class failed to meet the requirements of Rule 23, apparently construing the class-certification motion as embracing certification of a class for the § 1983 claims against the city defendants.

Holding that "§ 1985(3) will not permit the allowance of a class based on 'an animus directed at the class of persons who do

not share Defendants' religious beliefs about abortions,'" the district court dismissed all of plaintiffs' claims against the Society defendants, both their constitutional claims and their pendent state-law claims.

Before taking this action, the court had entered a temporary restraining order requiring Dallas to enforce the Texas Penal Code with respect to offenses against the clinic located in that city. Subsequently, the plaintiffs settled their § 1983 claims against Dallas and submitted the settlement to the district court for approval under Rule 23(e) because of the class action allegations in the complaint. The court declined to approve the settlement between the plaintiffs and Dallas on the ground that the plaintiffs had made their class allegations only against members of the Society and those claims had now been dismissed.

The court dismissed Mesquite as a defendant, observing that Mesquite had conceded plaintiffs' entitlement to injunctive relief but not to the claims for damages. Mesquite had further asked to be realigned as a plaintiff for purposes of the injunctive relief against the other defendants. This request was not opposed and was therefore granted. Since the granting of this motion left Mesquite as both plaintiff and defendant in the same suit, the court dismissed the remaining claims against Mesquite without prejudice. On appeal, Mesquite does not challenge the district court's dismissal of the Society and its members as defendants. Consequently, it no longer takes a position as plaintiff but seeks only to defend the dismissal of plaintiffs' damages claim, on the ground that it had no duty to protect the plaintiffs from the conduct of the Society defendants.

## II.

In reviewing the dismissal of a complaint for failure to state a claim, "[w]e must accept all well pleaded averments as true and view them in the light most favorable to the plaintiff. We will not go outside the pleadings and we cannot uphold the dismissal 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[1]

## III.

Section 1985(3) prohibits private conspiracies to deprive persons or classes of persons of the equal protection of the laws or of equal privileges and immunities under the laws,[2] but, as held by the Supreme Court, in *United Brotherhood of Carpenters, Local 610 v. Scott*,[3] it does not itself provide any substantive rights. Instead, the rights, privileges, and immunities protected by § 1985(3) "must be found elsewhere."[4] Section 1985(3) does not, therefore, protect individuals against private efforts to encroach on constitutional shields, such as the first amendment, that protect only against official conduct.[5] Moreover, as the Court held in *Griffin v. Breckenridge*,[6] the statutory reference to equal protection or equal privileges and immunities means that the actions of the conspirators must be motivated by a *class-based*, invidiously discriminatory animus.[7] "The conspiracy, in other words, must aim

1. *Rankin v. City of Wichita Falls, Texas*, 762 F.2d 444, 446 (5th Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

2. 42 U.S.C. § 1985(3) (1982) reads in part:
   If two or more persons ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.... the party so injured or deprived may have an action for the recovery of damages....

3. 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

4. *Id.* at 833, 103 S.Ct. at 3358.

5. *Id.*, 103 S.Ct. at 3358–59.

6. 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

7. *Id.* at 102, 91 S.Ct. at 1798.

at a deprivation of the equal enjoyment of rights secured by the law to all." [8]

The plaintiffs have alleged that the Society defendants' actions violated rights protected by § 1985(3): the right to travel guaranteed by the federal Constitution [9] and the right to equal exercise of their right to choose to have an abortion. Because the issue was not discussed by the district court or raised in the briefs, we assume for present purposes, without deciding, that the "right to equal exercise of the right to choose" an abortion is protected by § 1985(3). In that event, the sufficiency of the complaint must turn on whether it can be construed to allege a class-based animus, that is a prejudice against a group of persons or against a particular person because of his membership in that group.

■ The circuit courts of appeal have consistently held that religious ill-will is one of the class-based biases covered by § 1985(3).[10] The Society defendants contend that the Supreme Court's opinion in *Carpenters* undermines these holdings and that the legislative history of § 1985(3) does not reflect a congressional intent to extend § 1985(3) beyond racial discrimination. The *Carpenters* opinion, however, reserved judgment on this question, although the Court did state, "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans." [11] Following the course there taken by the Court, we do not decide whether § 1985(3) prohibits religious discrimination because, even assuming that it

does, the plaintiffs have not stated a claim of discrimination against a class of persons because of their religion.

As the *Griffin* Court noted, when Congress enacted § 1985(3), it did not intend to reach all tortious conspiracies that interfere with the rights of others even if the rights were derived from the Constitution. Instead, it sought to prevent conspiracies based on "invidiously discriminatory motivation," plans designed with the intention of depriving some racial group or other class of persons of *"equal* protection, or *equal* privileges and immunities." [12] To constitute a class within the meaning of this section, the members of the protected group must therefore share at least some common characteristic beyond simply being victims of a conspiracy, a common characteristic that distinguishes the class from the rest of the population.[13]

Thus in *Griffin*, the class affected consisted of blacks and persons who were, or who were believed to be, out-of-state civil rights workers.[14] In *Carpenters*, in which the Court held that an economic group, those who preferred not to be associated with unions, was not the type of class shielded by § 1985(3),[15] the majority opinion emphasized the class-based nature of § 1985(3). Explaining its decision, the *Carpenters* Court summed up that part of the legislative history supporting the position that § 1985(3) was intended to protect classes sharing a political belief. While pointing out that the legislation finally passed was the House bill, it quoted the broadest statement made during the Senate debate: "if a conspiracy were formed against a man 'because *he* was a Democrat,

---

**8.** *Id.*

**9.** *Carpenters,* 463 U.S. at 832, 103 S.Ct. at 3358; *Griffin,* 403 U.S. at 105, 91 S.Ct. at 1800.

**10.** *See, e.g., Colombrito v. Kelly,* 764 F.2d 122, 130–31 (2d Cir.1985); *Taylor v. Gilmartin,* 686 F.2d 1346, 1357–58 (10th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); *Ward v. Connor,* 657 F.2d 45, 48 (4th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982).

**11.** 463 U.S. at 836, 103 S.Ct. at 3360.

**12.** *Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798.

**13.** *Scott v. Moore,* 680 F.2d 979, 1017 (5th Cir. 1982) (en banc) (Rubin, J. and Williams, J., dissenting), *rev'd sub nom. United Brotherhood of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Askew v. Bloemker,* 548 F.2d 673, 678 (7th Cir.1976).

**14.** 403 U.S. at 90–91, 91 S.Ct. at 1792–93.

**15.** 463 U.S. at 837–38, 103 S.Ct. at 3360–61.

if you please, or because *he* was a Catholic, or because *he* was a Methodist, or because *he* was a Vermonter, ... then this section could reach it.' " [16] The Court then added: "Even if the section must be construed to reach conspiracies aimed at any class or organization on account of *its* political views or activities," it found no support for interpreting the statute "to reach conspiracies motivated by bias towards others on account of *their economic* views, status, or activities." [17] While the dissenters thought the section should reach the nonunion class involved, they too based their interpretation on the common characteristics of that group:

> As an initial matter, the intended victims must be victims not because of any personal malice the conspirators have toward them, but because of *their membership in or affiliation with a particular class. Moreover, the class must exist independently of the defendants' actions;* that is, it cannot be defined simply as the group of victims of the tortious action." [18]

The class protected by § 1985(3) is thus defined by the characteristics of those at whom the conspiracy is aimed, not by the beliefs of the conspirators.

Even those courts that have applied the section to religious discrimination have extended protection only to plaintiffs who were singled out because of their membership in a particular minority or fringe religious group.[19] The class is defined by the common religious characteristics of the victims of the conspiracy. Other courts have required that the class have at least an "intellectual nexus." For example, the Eighth Circuit held in *Means v. Wilson* [20] that "there must exist an identifiable body with which the particular plaintiff associated himself by some affirmative act.... [I]t must have an intellectual nexus which has somehow been communicated to, among, and by the members of the group." [21]

The plaintiffs argue that the class in this case consists of those people who do not agree with the Society defendants' point of view. The class test is turned on its head, however, if a class is defined as all those who are not of the same class as the conspirators, for example, all those who do not believe in a specific religious faith or political party—or all those who do not have a religiously based opposition to abortion.[22] Logic may define as two separate classes "we"—all those who share a certain belief—and "they"—all those who do not hold that tenet—, but § 1985(3) is aimed at an animus against those who have the despised trait. In this case, the plaintiffs do not limit the defendant class to persons who are members of a particular religious denomination but describe them only by their adherence to a specific belief that transcends denominational religious lines. Correspondingly, the plaintiffs define themselves only as "persons who do not share defendants' religious beliefs about abortion," which is no more a common trait or characteristic than would be a belief in using seat belts or in an ever-expanding universe.

Although—or perhaps because—the Fifth Circuit opinion in *Carpenters* (sub

---

16. *Id.* at 836–37, 103 S.Ct. at 3360 (quoting Senator Edmunds' statement, Cong.Globe, 42d Cong., 1st Sess., 567 (1871)) (emphasis added).

17. *Id.,* 103 S.Ct. at 3360–61 (emphasis added except as to word "economic").

18. *Id.* at 850, 103 S.Ct. at 3367 (Blackmun, J., dissenting) (emphasis added) (citations omitted). *See also* Note, *Conspiracies to Deny Civil Rights: Using Section 1985(3) to Control Labor Violence,* 56 S.Cal.L.Rev. 1079, 1089 (1983) (authored by Edward A. Kazmarek); Case Note, *The Demise of Section 1985(3); United Brother-*

hood of Carpenters and Joiners of America v. Scott, 18 Suffolk U.L.Rev. 453, 472 (1984) (authored by Ellen Petersen Otis).

19. *Taylor,* 686 F.2d at 1357–58; *Ward,* 657 F.2d at 48.

20. 522 F.2d 833 (8th Cir.1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976).

21. *Id.* at 839–40.

22. *Alexander v. Unification Church of America,* 634 F.2d 673, 678 (2d Cir.1980).

nom. *Scott v. Moore*)[23] was reversed by the Supreme Court, the plaintiffs seek to find some support for their position in phrases taken from the dissent from the Fifth Circuit opinion. That dissent observed, however, that a § 1985(3) class is composed of "those having common characteristics of an inherent nature; that is, classes accorded special protection by the equal protection clause of the fourteenth amendment and 'the kinds of classes Congress was trying to protect when it enacted the Ku Klux Klan Act.'"[24] Explaining further, the dissent added, "[n]ot only must the class share some common characteristic beyond simply being victims of a conspiracy, but it must also be distinguishable from the general populace by this characteristic."[25] Indeed, in a decision about whose merits we need not now express a view, the Fourth Circuit has limited the section to racially-motivated discrimination and held that it does not protect Republicans as a class.[26]

It is not always easy to distinguish between discrimination based upon what the victims are thought to be or to believe and discrimination based upon what the victims are thought *not* to be or believe. Racial discrimination, for example, may be characterized either as discrimination against blacks, Hispanics, Asiatics, or native Americans by whites or as discrimination against all non-whites by whites. In such cases, however, the distinguishing racial, religious, or other characteristic of the class may be found not only in the defendants' minds but also in shared characteristics or putative characteristics of the class. No common unity of either religious denomination or faith characterizes those who

seek, provide, or advocate a woman's freedom to choose an abortion. Advocacy of, or participation in, abortion may be motivated by convictions other than religious principles, and the plaintiffs do not contend that they have been singled out from other pro-abortion individuals because of their religious beliefs. It is indeed a matter of common knowledge that some persons who adhere to religious denominations whose tenets oppose abortion hold views contrary to the dogma of their faith. The plaintiffs' construction of § 1985(3) is unnecessary to protect individuals from the denial of equal rights because of their religious beliefs. Instead of eliminating religious inequality, in fact, plaintiffs' construction of § 1985(3) might create it. Anti-abortion activists would be singled out as potential § 1985(3) defendants only if their opposition were animated by religious beliefs.

Plaintiffs liken the issue raised by their complaint to the question involved in *Shaare Tefila Congregation v. Cobb*,[27] a case in which the Supreme Court has granted a writ of certiorari.[28] In *Shaare Tefila*, the question before the Court is whether another civil rights statute, the Civil Rights Act of 1866, now codified as 42 U.S.C. § 1982 (1982), which assures all citizens the same right to hold property as white citizens, may be invoked by Jews, on the basis that, even though those who adhere to Judaism are not a racial group, the defendants perceive members of that religious faith to be a race.[29] In *Shaare Tefila*, the distinguishing feature, Judaism, is a characteristic of the plaintiffs whether it is viewed as a religion or a race so the issue

---

**23.** 680 F.2d 979 (5th Cir.1982) (en banc).

**24.** *Id.* at 1016 (Rubin, J. and Williams, J., dissenting) (quoting *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 347 & n. 9 (5th Cir.) (en banc), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981)).

**25.** *Id.* at 1017 (Rubin, J. and Williams, J., dissenting). *Compare Kimble*, 648 F.2d at 347.

**26.** *Harrison v. KVAT Food Management, Inc.*, 766 F.2d 155 (4th Cir.1985) (citing a number of

circuit court decisions interpreting § 1985(3)). *See also* Note, *Republicans as a Protected Class?*: Harrison v. KVAT Food Management, Inc. *and the Scope of Section 1985(3)*, 36 Am.U.L.Rev. 192 (1986) (authored by Daniel E. Durden).

**27.** 785 F.2d 523 (4th Cir.1986).

**28.** —— U.S. ——, 107 S.Ct. 62, 93 L.Ed.2d 21 (1986).

**29.** 55 U.S.L.W. 3197–98 (Oct. 7, 1986) (No. 85–2156).

is plainly dissimilar even if the differences between the statutes involved are ignored.

Because plaintiffs do not form a class protected by § 1985(3), it is unnecessary for us to consider whether the allegation that the defendants' acts were intended to deprive some citizens of the right to travel interstate sufficed to state the kind of federal constitutional right protected by § 1985(3),[30] or whether, as contended by the defendants, it was inadequate because "not aimed at transients."[31]

## IV.

■ Whether the plaintiffs have stated a Rule 23 class-action basis for their suit against the two city defendants must be determined on the basis of the allegations of their complaint construed liberally, as required by Federal Rule of Civil Procedure 8.[32] The amended complaint is captioned "CLASS ACTION" on its first page. Following paragraph 5, the complaint contains a subhead: "CLASS ACTION ALLEGATIONS RE JANE ROE I AND JANE ROE II." Paragraph 6 then recites that both Jane Roes "are typical of a much larger class of women" who have suffered at the hands of the individual defendants. It states, in subparagraph (e), "[t]he questions regarding the respective rights and privileges of the parties both predominate over any individual questions and lend themselves to declaratory and injunctive relief against each of the Defendants."

The complaint does not therefore indisputably invoke Rule 23 against the cities, but neither does it negate a class-action claim. It is at worst ambiguous. The City of Dallas read the request for class certification to be directed against it, for it not only opposed the motion but did not suggest in its opposition that the complaint failed to set forth a class-action request against it.

The trial court did not accord the class-action allegations of the complaint the liberal interpretation such pleadings warrant. We therefore reverse the dismissal of the complaint as to the City of Dallas and remand for review of the settlement agreement and any other proceedings that may be appropriate consistent with this opinion.

## V.

■ The district court dismissed the suit against the City of Mesquite because, at an earlier stage in the proceedings, the City had aligned itself with plaintiffs in their requests for injunctive relief against the Society defendants while continuing to challenge the requests for damages against itself. Consequently, in the same suit, the City would be both plaintiff pressing some claims and defendant opposing others. That situation no longer exists and is therefore no reason for dismissal of the § 1983 claims against the City of Mesquite.

The City urges in its brief that the plaintiffs have failed to state a claim against it for which relief can be granted and that we should nonetheless affirm the dismissal on that basis if the ground on which the district court dismissed the suit against it is not sound. The district court did not rule on the sufficiency of the complaint and the plaintiffs do not ask us to uphold its adequacy. We therefore express no opinion on the matter.

For these reasons, we AFFIRM the dismissal of the § 1985(3) claim against the Abortion Abolition Society and its members, REVERSE the dismissal of the § 1983 claim against the City of Mesquite, REVERSE the dismissal of the § 1983 claim against the City of Dallas, and REMAND to the district court to take such further action as may be appropriate consistent with this opinion.

---

**30.** *Carpenters,* 463 U.S. at 832, 103 S.Ct. at 3358; *Griffin,* 403 U.S. at 105, 91 S.Ct. at 1800.

**31.** *Village of Belle Terre v. Boraas,* 416 U.S. 1, 7, 94 S.Ct. 1536, 1540, 39 L.Ed.2d 797 (1974).

**32.** *Gresham Park Community Organization v. Howell,* 652 F.2d 1227, 1236 (5th Cir. Unit B 1981).