**NATIONAL ABORTION FEDERATION, et al., Plaintiffs,**

v.

**OPERATION RESCUE, et al., Defendants.**

**No. CV 89–1181 AWT.**

United States District Court, C.D. California.

Sept. 14, 1989.

Carol A. Sobel, John Hagar, Paul L. Hoffman, ACLU Foundation of Southern California, Los Angeles, Cal., Betty Wheeler, ACLU Foundation of San Diego and Imperial Counties, San Diego, Cal., Paul Persons, Chico, Cal., for plaintiffs.

Cyrus Zal, Folsom, Cal., Victor L. Smith, Torrance, Cal., Samuel B. Casey, Whittier, Cal., for defendants Operation Rescue, Joseph Foreman, and Jeff White.

Robert L. Sassone, Santa Ana, Cal., for defendant Dr. Randy Adler.

**MEMORANDUM ORDER ON
MOTION TO DISMISS**

TASHIMA, District Judge.

On August 7, 1989, a "Motion to Dismiss For Failure to State A Cause of Action (FRCP 12(b)(6)); or In the Alternative For Judgment on the Pleadings (FRCP 12(c))" was filed on behalf of virtually all respondents in the recently-completed civil contempt proceeding. With respect to non-defendant respondents, the motion is now moot because, as to them, a final judgment has been rendered in the contempt proceeding, and the Court has ruled that even assuming the motion is well taken, otherwise contumacious conduct would not thereby be excused. *See In re Establishment Inspection of Hern Iron Works, Inc.,* 881 F.2d 722, 725–26 (9th Cir.1989). However, because several of the moving parties are named defendants, the motion is not entirely moot and, as the Court indicated at the hearing on August 29, 1989, the motion, although late, will be addressed on the merits.

Although a number of arguments are made in the motion, the Court has concluded that none requires extended discussion, save one.[1]

The complaint states one federal claim and six pendent state claims. It is brought as a class action on behalf of two putative classes. The first class are women who seek abortions "and are deprived of that care" by defendants' actions. The second class are providers of "abortion and other gynecological" services "which are unable to provide that care" because of defendants' conduct.[2]

The federal claim is brought under 42 U.S.C. § 1985(3). The key, charging allegation appears in paragraph 50 of the complaint:

---

1. Defendants challenge an asserted claim that plaintiffs' constitutional right to have an abortion have been interfered with, on the ground that no state action is alleged. *See New York State NOW v. Terry,* 704 F.Supp. 1247, 1260 (S.D.N.Y.1989). If such a claim can be read into the complaint, plaintiffs have abandoned it as they do not pursue it in this motion. The only constitutional right plaintiffs claim has

been interfered with is their right to interstate travel, a right which is protected against purely private action. *See id.*

2. Plaintiffs virtually conceded at oral argument that this second class, health care providers, is not a proper class in this action.

**1170**

Defendants conspired together with each other and other parties presently unknown for the purpose of denying women seeking abortions and other family planning services at targeted facilities the equal protection of the laws and the equal privileges and immunities under the law and obstructing travel, in violation of 42 U.S.C. section 1985(3). Defendants are and continue to be motivated by an invidiously discriminatory animus directed at the class of women seeking to exercise their constitutional and legal right to choose abortions and other family planning services at the targeted facilities, as well as at all like medical facilities in the state of California.

The elements which comprise a § 1985(3) claim are well known and need not be repeated; only one is in issue on this motion. That is the requirement that the alleged conspiracy be "for the purpose of depriving ... any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws." *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). Further, an inextricable part of this element is that there be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

■ Defendants mount a two-fold attack on this requirement. First, they claim that the class, which is the focus of the class-based animus, cannot be defined solely in terms of the object of the conspiracy. *See, e.g., Roe v. Abortion Abolition Soc'y*, 811 F.2d 931, 934–35 (5th Cir.), *cert. denied*, 484 U.S. 848, 108 S.Ct. 145, 98 L.Ed.2d 101 (1987); *Lopez v. Arrowhead Ranches*, 523 F.2d 924, 926–27 (9th Cir.1975). Plaintiffs agree with this statement of the law, but deny that their class is defined simply as victims of defendants' action. The Court agrees that plaintiffs meet the dictate of *Carpenters* that "the class must exist independently of the defendants' action;" it is not "defined simply as the group of victims of the tortious conduct." 463 U.S. at 850, 103 S.Ct. at 3367. Construing the complaint liberally in favor of the pleader, the class which animates defendants' conduct is "women seeking to exercise their constitutional ... rights to choose abortions." (Comp. ¶ 50.) That class would exist whether or not defendants engaged in their rescue/blockade actions of abortion facilities.

■ Defendants' second attack on plaintiffs' class presents a more difficult issue. First, the Court recognizes that a number of respected courts have held that a class identical to the class alleged here was entitled to protection under § 1985(3). *See Portland Feminist Women's Health Center v. Advocates For Life, Inc.*, 712 F.Supp. 165, 169 (D.Ore.1988) (class of women who choose to exercise their constitutional right to privacy by having an abortion); *Roe v. Operation Rescue*, 710 F.Supp. 577, 581 (E.D.Pa.1989) (women seeking abortions); *New York State NOW v. Terry*, 704 F.Supp. 1247, 1259 (S.D.N.Y.1989) (women seeking abortions). With all due respect to these cases, however, the Court concludes that women seeking abortions is not a class intended to be protected by the Ku Klux Klan Act.

As is well known, the Supreme Court has declined, most recently in 1983, to define the outer limits of § 1985(3):

Because the facts in *Griffin* revealed an animus against Negroes and those who supported them, a class-based, invidious discrimination which was the central concern of Congress in enacting § 1985(3), the Court expressly declined to decide "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable under the portion of § 1985(3) before us." 403 U.S. at 102, 91 S.Ct. at 1798 n. 9. Both courts below answered that question; both held that the section not only reaches conspiracies other than those motivated by racial bias but also forbids conspiracies against workers who refuse to join a union. We disagree with the latter conclusion and do not affirm the former.

*Carpenters,* 463 U.S. at 835, 103 S.Ct. at 33. The Court held only that § 1985(3) did not reach conspiracies motivated by economic or commercial animus. *Id.* at 838, 103 S.Ct. at 33. This Circuit also has yet to speak definitively on the subject. There is, however, some guidance from Ninth Circuit cases. At least one case takes an extremely narrow view of § 1985(3), interpreting *Carpenters* as having "explicitly restricted the statutory coverage to conspiracies motivated by racial bias." *Gibson v. United States,* 781 F.2d 1334, 1341 (9th Cir.1986). The Court then went on to affirm dismissal of plaintiffs' § 1985(3) claim because "plaintiffs failed to allege that the law enforcement abuses they claim they suffered were on account of their race." *Id.* Restriction of § 1985(3) to race-based claims, thus, appears to be a holding of the case. This, however, is not the end of the matter because, as sometimes happens, Circuit law is in conflict on this issue. The other line of Ninth Circuit cases is summarized in *Schultz v. Sundberg,* 759 F.2d 714 (9th Cir.1985) (which is not cited in *Gibson*):

> [W]e have extended it [§ 1985(3)] beyond race only when the class in question can show that there has been a governmental determination that its members "require and warrant special federal assistance in protecting their civil rights." *De Santis v. Pacific Tel. & Tel. Co.,* 608 F.2d 327, 333 (9th Cir.1979); *accord Canlis v. San Joaquin Sheriff's Posse Comitatus,* 641 F.2d 711, 720 (9th Cir.1981). More specifically, we require either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection. *De Santis,* 608 F.2d at 333.

*Id.* at 718 (concluding that "state representatives" not a proper § 1985(3) class). Even if *Gibson* does not control, the Court concludes that a class of women seeking abor-

tions does not meet the requirement summarized in *Schultz.*

If, as *Portland Feminist* assumes, this is gender-based discrimination, this Circuit would recognize a § 1985(3) class. *See Reichardt v. Life Ins. Co.,* 591 F.2d 499, 505 (9th Cir.1979).[3] However, to state that a class of women seeking abortions is "analytically indistinguishable from a class of women who purchase disability insurance," *Portland Feminist,* 712 F.Supp. at 169, is to beg the question. The Court disagrees with the proposition that any "particular [sub]class of women," *id.,* is a protected class.[4] For if the animus is directed at a particular class of women, then, by definition, it is not directed at other classes of women or at women as a class. If that is so, then the discrimination cannot be gender-based, because it separates persons of the same gender from each other and, obviously, on a basis other than by gender. The inquiry, thus, must be made without respect to gender, *i.e.,* it is the "seeking abortion" trait which animates the defendants' actions and must be the basis for making the § 1985(3) analysis.

Such a class does not stand up to close analysis under *Schultz.* Although women, under certain circumstances, still have a constitutional right to seek an abortion, the courts have never designated "abortion seekers" as a class requiring special protection or subject to exacting scrutiny. And certainly Congress has never so indicated in legislation. The Supreme Court's recent summary of its abortion decisions since *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), cannot be read as suggesting that women seeking abortions is a suspect class subject to exacting scrutiny. *See Webster v. Reproductive Health Serv.,* —— U.S. ——, 109 S.Ct. 3040, 3051–52, 106 L.Ed.2d 410 (1989). The Court holds that women seeking abortions is not a class

---

**3.** Assuming that pre-*Carpenters* cases continue to maintain their vitality in light of *Gibson's* apparent interpretation of *Carpenters.*

**4.** If this principle were carried to its logical conclusion, the following illogical result would obtain: Because women are a protected class,

any subclass of women is also a protected class. Because men are not a protected class, any subclass of men is also an unprotected class. Therefore, *e.g.,* a class of homosexual women would be protected, but a class of homosexual men would not be.

intended to be protected by the Ku Klux Klan Act.

For the above reasons, defendants' motion to dismiss for failure to state a claim under § 1985(3) is granted. Although the Court harbors grave doubt as to whether plaintiffs can do so, they have asked for leave to amend in the event the motion is granted.[5]

IT IS ORDERED that the first claim for relief alleged in the complaint is DISMISSED and plaintiffs are granted 30 days leave to file and serve an amended complaint.

5. The motion also seeks dismissal of all of the pendent state claims. Under the well-settled rule of this Circuit concerning the disposition of pendent claims, it is premature to dismiss those claims since leave to amend has been granted. *See, e.g., Schultz,* 759 F.2d at 718.