PLANNED PARENTHOOD ASSOCIATION OF SAN MATEO COUNTY, Plaintiff,

v.

HOLY ANGELS CATHOLIC CHURCH, Northern California Operation Rescue, James Robinson, Dorothy Ann Connolly, Charles Metzger, Nancy Murray, and Does 1 through 100, Defendants.

No. C–91–0580 SAW.

United States District Court, N.D. California.

May 29, 1991.

McCutchen, Doyle, Brown & Enersen, William D. Kissinger, Enid Van Hoven, Caroline Zander, San Francisco, Cal., for plaintiff.

Scott Thomas, Thomas & Porrazzo, San Jose, Cal., Nikolas Nikas, American Family Assoc. Law Cent., Phoenix, Ariz., for defendants.

## MEMORANDUM ON ISSUANCE OF PRELIMINARY INJUNCTION

WEIGEL, District Judge.

### Summary of Decision

At this preliminary point in this case, the Court acts to protect the rights of all parties guaranteed by the Constitutions of the United States and of the State of California.

Under both Constitutions, women have the right to seek counseling and medical services, including abortion. They are entitled to exercise this right without unlawful interference or intimidation by defendants.

Planned Parenthood Association of San Mateo County operates a clinic providing such services. The Association sues on behalf of women who desire the services of the clinic.

Under both the state and federal Constitutions, defendants have the right to freedom of speech, assembly and protest. These rights must be protected against invasion by plaintiff.

The rights of both parties are subject to lawful limitations. The rights asserted by Planned Parenthood may not transcend limitations delineated by law as, for example, legal prohibition against abortion after the 20th week of pregnancy.

The rights of defendants to freedom of speech, assembly and protest are limited to conduct which does not violate the law as, for example, that against disturbing the peace.

The evidence before the Court in this case discloses no violation of law by plaintiff.

On the other hand, while the evidence is not free from conflict, credible evidence shows that defendants have unlawfully attempted to intimidate women into abandoning planned abortion, blocking entrance to plaintiff's clinic, threatening staff members with bodily harm, shoving plastic replicas of fetuses into the faces and cars of clinic staff and patients, as well as other action which transcends the rights of peaceful protest, assembly and free speech.

However zealous and genuine persons may be in their convictions on moral, philosophical and religious issues, no person has the right to act unlawfully in furthering such convictions. Defendants have violated the limitations upon their claimed constitutional rights and must be stopped from violating the law.

Therefore, the Court has issued a preliminary injunction which, while protecting the rights of Planned Parenthood, has been carefully tailored so as not to interfere with any right of free speech, assembly or protest. As can be seen upon inspection of the precise terms of the preliminary injunction, the Court cannot and does not condone preventing, threatening or intimidating women who wish to avail themselves of the services offered by the clinic. Nor can the Court condone preventing, threatening or intimidating staff members of the clinic.

Finally, in this summary, it should be noted that the injunction does not run against defendant Holy Angels Catholic Church. This is because the Roman Catholic Archbishop of San Francisco, a corporation sole (the "Archdiocese") has entered the case with a sworn declaration that the Archdiocese is the owner and operator of the Holy Angels Catholic Church which is not a separate legal entity. The declaration, moreover, is unambiguously specific, stating:

The ARCHDIOCESE does not condone, encourage or approve of any interference with access to or travel to or from any abortion clinic, including those operated by plaintiff and specifically the clinic located at 219 Southgate Avenue, Daly City, California (the "CLINIC"), nor does it condone, encourage or approve of blocking ingress to or egress from any clinic; harassing any individual whether a patient at any such clinic or not; approaching or speaking to any individual at or near any such clinic for purposes of harassment, threats or persuasion; making any excessively loud sound at any Clinic such as chanting or shouting; offering literature to any Clinic worker or patient; disturbing the public peace in any way or otherwise violating any local or state laws governing behavior in public places.

No person is authorized, instructed or encouraged by the ARCHDIOCESE, tacitly or overtly, to engage in any of the behavior referred to above.

The ARCHDIOCESE has no connection, formal or informal, tacit or overt, with defendant OPERATION RESCUE or any other defendant in this action, with the exception that some of the individual defendants may or may not be Roman Catholics. The ARCHDIOCESE has no direct or indirect, formal or informal, control or right of control over the activities of any other defendant in this action. The actions of any other defen-

dant, if any, are done without the knowledge, approval, encouragement or ratification of the ARCHDIOCESE.

The Archdiocese was not named by plaintiff as a defendant. Based upon the foregoing declaration, there is no reason why it should be. The declaration appropriately recognizes the lawful limitations upon freedom of speech, assembly and protest.

----------

## Findings of Fact and Conclusions of Law

Plaintiff operates a medical clinic at 619 Southgate Avenue in Daly City, California ("the clinic"). Complaint, ¶ 12. Planned Parenthood is a non-profit corporation which provides information counseling and medical services to individuals concerning reproduction, contraception, and reproductive rights. Colby Decl., ¶ 2. The clinic provides a full range of reproductive health services for men and women, including family planning and reproductive counseling, medical exams, laboratory testing, and abortion services performed by licensed healthcare professionals. Abortion services are offered for women in their first fourteen weeks of gestation on Saturdays from 8:00 a.m. until approximately 1:00 p.m. *Id.*, ¶ 4. Patients reserve appointments in advance. Among the clinic's patients are pregnant women who have traveled from out of state to obtain abortions. *Id.*, ¶ 2.

Planned Parenthood rents the space for the clinic from the Westlake Development Company. It is one of approximately fifteen tenants in a mini-mall known as the Westlake Shopping Center. All tenants share two parking lots, one located in front of the building housing the clinic, and one located behind the building, indicated on the diagram attached to the Preliminary Injunction as Parking Areas A and B, respectively. *Id.*, ¶ 3. Two signs are posted near these parking areas indicating that they are reserved for shopping center tenants, employees, and guests of tenants. Shaughnessy Decl., ¶ 14. In addition, there is a walkway in front of the shopping center, leading from Parking Area A to the clinic and other businesses. Colby Decl.,

¶ 3. The parties dispute whether this walkway is public or private.

Picketers gather, primarily on Saturdays, in Parking Areas A and B and on the walkway in front of the clinic to protest abortion. *Id.*, ¶ 5. On an average Saturday, eight to ten picketers march in front of the clinic. Plaintiff accuses these picketers of intimidating and harassing Planned Parenthood's staff and patients. Specifically, plaintiff claims that the protestors have engaged in the following activities: trespassing onto the allegedly private walkway and Parking Areas A and B (Colby Decl., ¶ 5; Kelly Decl., ¶ 12; Shaughnessy Decl., ¶ 14), thrusting lurid literature at the patients (Shaughnessy Decl., ¶ 11), accusing patients and staff of being "baby killers" and "murderers" (*id.*), attempting to intimidate patients into abandoning their planned abortions (Shaughnessy Decl., ¶¶ 7, 11; Kelly Decl., ¶ 7), rushing cars (Shaughnessy Decl., ¶ 7; Kelly Decl., ¶ 7), blocking the entrances to the clinic (Colby Decl., ¶ 6; Kelly Decl., ¶¶ 7–9; Gibson Decl., ¶ 5; Gibson Supp.Decl., ¶¶ 5–6, 9; Vlahakos Decl., ¶ 3), threatening staff members with bodily harm (Kelly Decl., ¶ 10; Gibson Supp.Decl., ¶ 9), impeding patients' ability to walk to the clinic (Gibson Supp.Decl., ¶ 7; Kelly Decl., ¶ 8), and chanting so loudly as to interfere with the operation of the clinic. Gibson Supp.Decl. ¶¶ 4–5, 10; Shaughnessy Decl., ¶ 11. The protestors have even shoved plastic replicas of fetuses into the faces and cars of Planned Parenthood patients and staff. Shaughnessy Decl., ¶ 8. Plaintiff contends that protestors persist in following patients, shoving leaflets at them and harassing them despite patients' frequent requests that the protestors leave them alone. Gibson Decl., ¶¶ 5–6, 8.

The protestors' conduct causes plaintiff's patients and staff extreme emotional distress. Shaughnessy Decl., ¶¶ 12–13; Rosenthal Decl., ¶¶ 4–7. The patients are often so upset by the picketers' conduct that they are forced to reschedule their appointments, requiring more advanced, and therefore more dangerous, medical procedures. Shaughnessy Decl., ¶ 10; Rosenthal Decl., ¶ 7. Plaintiff has been forced to obtain the

services of volunteer escorts to shuttle patients between their cars and the clinic because of the aggressive and invasive protesting. Colby Supp.Decl., ¶ 5; Gibson Decl., ¶ 3; Kelly Decl., ¶ 3; Shaughnessy Decl., ¶¶ 3, 5–6. Plaintiff has sought police assistance in dealing with the protests, but the police have done little to remedy the situation, stating that they require an injunction to take action. Colby Decl., ¶ 8.

The evidence with respect to the various defendants is in conflict. No single defendant is accused of engaging in *all* of the above activities. Defendant James Robinson is allegedly the most vocal protestor. He purportedly blocks the walkway and intimidates staff and patients. For example, he has told a patron of a nearby cafe that he would like to hit a young volunteer. Gibson Supp.Decl., ¶ 9. On another occasion, he threatened a Planned Parenthood volunteer by shouting "I should kill you." Kelly Decl., ¶ 10.

Defendant Charles Metzger is accused of standing on the walkway in front of the clinic and preaching so loudly that activities inside the clinic were impeded. The clinic is forced to turn up the volume of the waiting room television to a very high volume to drown out his shouting. Gibson Supp.Decl., ¶ 10, *Id.*

Defendant Dorothy Ann Connolly allegedly yells at plaintiff's patients in an attempt to dissuade them from undergoing their abortions. She blocks the patients' way and obstructs their access to the clinic. She also engages in a "footrace" with Planned Parenthood's escorts, who attempt to escort patients safely toward the clinic door. Ms. Connolly is also accused of shouting continually at patients and relaying false information to them, such as her statement that Planned Parenthood does not employ "real" doctors and that fetuses of twelve weeks' gestation are over a foot long. Gibson Supp.Decl., ¶¶ 6–8.

Defendant Nancy Murray is confined to a wheelchair. Plaintiff claims that she places her wheelchair right next to the clinic entrance and occasionally uses her chair to block access. She also chants so loudly as to interfere with the clinic's operation. Gibson Supp.Decl., ¶ 5.

Defendant Holy Angels Catholic Church ("the Church") is named as a defendant because of the conduct of Father Edward Cleary, a Roman Catholic Priest of the Archdiocese of San Francisco. Father Cleary has not been named as a defendant. Until July 1990, Father Cleary was a pastor at the Holy Angels Catholic Church, a parish owned and operated by the Roman Catholic Archbishop of San Francisco, who appears on the Church's behalf. Cleary Decl., ¶ 2. Father Cleary invited parishioners of the Church to join him in saying the Rosary outside the clinic every other Saturday. *Id.*, ¶ 3. Plaintiff contends that the Church group's activities impede its ability to assist its patients. The Church is accused of engaging in some protected first amendment activities, such as passing out literature and carrying anti-choice posters, as well as some unprotected activities, such as blocking access to the clinic, yelling at individuals, and chanting loudly. Gibson Supp.Decl., ¶ 4; Vlahakos Decl., ¶ 4. The Archdiocese disputes the charge that the priest has engaged in harassing conduct, but argues that in any event, it has not encouraged, directed, authorized, or condoned the priest's conduct and should thus not be subject to an injunction. *See* McKay Decl. and the Archdiocese Memorandum.

Defendant Operation Rescue of Northern California ("Operation Rescue") allegedly organizes periodic "hits," involving fifty or more people who intentionally block access to the clinic. Colby Decl., ¶ 6. Operation Rescue did not respond nor otherwise appear in this action until oral argument on May 23, 1991. The Clerk had entered default against it. At oral argument, counsel advised that the correct name is Operation Rescue of California.

The individual defendants and the Church deny engaging in anything other than quiet, peaceful protesting. They admit their presence at the clinic, but claim their protest activities have been limited to leafleting and speaking quietly to clinic patients. They deny obstructing patients' access to the clinic, yelling at them, or threat-

ening them. *See* Cleary Decl.; Robinson Decl.; Murray Decl.; Connolly Decl.

Plaintiff alleges claims on behalf of itself and its patients for: (1) deprivation of right to privacy under both the federal and state Constitutions; (2) trespass; (3) blocking ingress and egress; (4) tortious harassment; (5) intentional infliction of emotional distress; (6) false imprisonment; and (7) violation of 42 U.S.C. § 1985(3).

■ To obtain a preliminary injunction, plaintiff must show either: (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor. *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1448 (9th Cir.1988) (citation omitted). These are not two distinct tests, but extremes of the same continuum "in which the required showing of harm varies inversely with the required showing of meritoriousness." *Id.* (citation omitted). Plaintiff has demonstrated the existence of "serious questions going to the merits" and that the balance of the hardships tips decidedly in its favor.

Plaintiff's most central causes of action are for violation of 42 U.S.C. § 1985(3) and for trespass. The preliminary injunction should issue on the basis of these two claims.

■ Plaintiff alleges that defendants' conduct has violated 42 U.S.C. § 1985(3), popularly known as the Ku Klux Klan Act. Section 1985(3) provides in relevant part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, of one or more persons engaged therein do, or cause to be done, any act in further-

ance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To state a claim under Section 1985(3), plaintiff must allege the following: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Bhd. of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983).

The second element above has engendered much contention and confusion among the courts and is hotly disputed in this action. The Supreme Court has stressed that to state a claim under this provision, a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 834, 103 S.Ct. at 3359 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The complaint here could have been better drafted, since it does not explicitly use the words "class" and "discriminatory animus." Nonetheless, it is clear that plaintiff claims that defendants have acted with discriminatory animus in interfering with the rights of women to seek abortions at the clinic. The class, which Planned Parenthood argues is protected under Section 1985(3), consists of women choosing to exercise their right to an abortion and women traveling from out of state to exercise that right—more loosely, women seeking abortions. *See* Complaint, ¶ 65.

Defendant contends that Section 1985(3) guards solely against *racial* animus.

Whether this is correct is unclear. On several occasions, the Supreme Court has reserved judgment on whether Section 1985(3) governs *nonracial* animus. The Court granted a writ of certiorari in an abortion protesting case quite similar to this one, in which the Fourth Circuit ruled that Section 1985(3) protected against conspiracies to interfere with the right of women to obtain abortions. *See National Organization for Women v. Operation Rescue*, 914 F.2d 582 (4th Cir.1990) (per curiam), *cert. granted sub nom. Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991). Presumably, the Court will at that time finally resolve the scope of Section 1985(3).

In the meantime, the Circuits are split on the question of whether interfering with the right of women to obtain abortions is class-based discrimination within the meaning of Section 1985(3). The majority of the courts say that it is.[1] Two other district courts in this Circuit have addressed this issue in abortion protest cases and have reached opposite conclusions.[2] The United States Court of Appeals for the Ninth Circuit has handed down opinions on the question which are difficult to reconcile. In *Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499 (9th Cir.1979), the court found that women purchasers of disability insurance were a class protected under Section 1985(3). In this decision, the court ratified the notion of gender-based discrimination as invidious class-based animus.

After the Supreme Court's decision in *Scott, supra*, the Ninth Circuit interpreted Section 1985(3) as governing only *racial* discrimination. *Gibson v. United States*, 781 F.2d 1334 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). Yet both before and after deciding *Gibson*, the court held that Section 1985(3) covers discrimination against classes other than race where courts have designated the class in question as a suspect or semi-suspect class requiring higher scrutiny, or where Congress has indicated through legislation that the class required special protection. *See, e.g., McCalden v. California Library Ass'n*, 919 F.2d 538 (9th Cir.1990); *Schultz v. Sundberg*, 759 F.2d 714 (9th Cir.1985). These cases are inconsistent with *Gibson*, but appear to represent the Ninth Circuit's dominant jurisprudence in this area.

■ Under this analysis, women seeking abortions are a class protected against discrimination under Section 1985(3). Women as a group have been accorded semi-suspect class status by the courts, and laws which discriminate on the basis of gender are accorded heightened scrutiny. That women seeking abortions is a subset of the class of women should make no difference. Aside from the fact that only women get pregnant, Congress has legislated in Title VII to protect pregnant women from discrimination.

■ Defendants also contend that their actions display no *animus* because they harbor no ill-will toward the patients at the clinic, but merely conscientiously object to abortion. Defendants would be correct if they *merely* opposed abortion. But they have acted on their opposition in such a way as to deprive women of their rights. There is evidence in the record that many

---

1. *See, e.g., National Organization for Women v. Operation Rescue*, 914 F.2d 582 (4th Cir.1990) (per curiam), *cert. granted sub nom. Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991); *New York State National Organization for Women v. Terry*, 886 F.2d 1339 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Southwestern Medical Clinics of Nevada, Inc. v. Operation Rescue*, 744 F.Supp. 230 (D.Nev.1989); *Portland Feminist Women's Health Center v. Advocates for Life Inc.*, 712 F.Supp. 165 (D.Or.), *aff'd as modified*, 859 F.2d 681 (9th Cir.1988); *Roe v. Operation Rescue*, 710 F.Supp. 577 (E.D.Pa.1989), *aff'd in part and rev'd in part*, 919 F.2d 857 (3d Cir.1990). But see *Mississippi Women's Medical Clinic v. McMillan*, 866 F.2d 788 (5th Cir.1989); *National Abortion Federation v. Operation Rescue*, 721 F.Supp. 1168 (C.D.Cal.1989).

2. *Compare Portland Feminist Women's Health Center*, 712 F.Supp. 165 (women seeking abortions protected class under Section 1985(3)) *with National Abortion Federation*, 721 F.Supp. 1168 (women seeking abortions not protected class under Section 1985(3)).

wómen are so distressed and intimidated by defendants' invasive conduct that they are unable to go through with their scheduled abortions. Shaughnessy Decl., ¶ 10; Rosenthal Decl., ¶ 7. Many reschedule and are forced to undergo more risky procedures because of the delay. *Id.* "Animus" or "discrimination" does not require that defendants actually dislike or hate the women they affect.

To state a claim under Section 1985(3), plaintiff must also show that defendants interfered with their constitutional rights. Planned Parenthood claims that defendants interfered both with the right to travel of women seeking abortions and their right to obtain the abortion. Defendants insist that both bases for asserting the Section 1985(3) claim fail.

■ The Supreme Court has often recognized that all citizens of the United States have the right to travel across state lines. *See, e.g., United States v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966). This right is protected against both government *and* private interference. Private conspiracies to deprive a protected class of its right to travel are undisputedly covered under Section 1985(3). *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The Court has also struck down a residency requirement which impaired the right of nonresident women to seek medical services—such as abortions— as violative of the constitutional right to travel. *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

■ Plaintiff has submitted evidence showing that women travel from out of state to obtain abortions at the clinic. Colby Decl., ¶ 2. Defendants' protest activities interfere with these women's ability to procure the abortions. Defendants nonetheless maintain that they did not intentionally interfere with interstate travel, rather, they treated *all* women seeking abortions at the clinic alike, whether from in state or out of state. That defendants may have harassed all women equally does not mean that they did not violate the right of some to travel. Several courts have considered this claim in the abortion protest context and found it sufficient that by their actions, the protestors impaired the right of pregnant women to travel.

■ Plaintiff's Section 1985(3) claim is also grounded on the patients' fourteenth amendment right to privacy, which includes the right to obtain an abortion. This claim is somewhat trickier, because the fourteenth amendment protects only against *state* interference with protected rights, not private interference. Defendants contend that this claim is flawed because there is no state action here.

The law in this area is not settled. The Supreme Court has stated that where a plaintiff bases a Section 1985(3) claim on a substantive right requiring state involvement, the plaintiff must prove "that the State is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the State." *Scott, supra,* 463 U.S. at 830, 103 S.Ct. at 3357. However, the Court expressly stated that the conspirators do not need to be state actors in order for there to be state involvement.

A few courts have held that if abortion picketers purposefully keep police in the dark about their next "hit" or conspire to influence police, they have impaired law enforcement's ability to secure for women their right to an abortion. *Portland Feminist Women's Health Center,* 712 F.Supp. at 168; *New York State Organization for Women v. Terry,* 704 F.Supp. 1247, 1260 (S.D.N.Y.1989), *aff'd on other grounds,* 886 F.2d 1339 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). According to these courts, this is sufficient state involvement to assert a claim of violation of the right to abortion under Section 1985(3). *Id.* Yet another court termed this argument "doubtful." *National Organization for Women v. Operation Rescue,* 726 F.Supp. 1483, 1493 n. 11 (E.D.Va.1989), *aff'd on other grounds,* 914 F.2d 582 (4th Cir.1990) (per curiam), *cert. granted sub nom. Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991). There is evidence in the record suggesting that Operation Rescue refuses to alert police as to their prospective ac-

tions, thereby impeding police ability to come to Planned Parenthood's aid. Colby Supp.Decl., ¶ 9.

Whether or not plaintiff's claims under Section 1985(3) are supported by state involvement on the facts in this case, violation of the right to travel is a sufficient and independent basis for reliance on that Section.

Viewing the evidence as a whole, Planned Parenthood has established a likelihood of success on the merits of its Section 1985(3) claim, particularly based on deprivation of the right to travel. At the minimum, plaintiff has shown that there are "serious questions going to the merits" of the dispute. As elaborated below, the balance of hardships tips sharply in plaintiff's favor.

■ Plaintiff also asserts a claim for trespass. In addition, it alleges as a separate tort the blocking of ingress and egress. That blocking is not a tort under California law, but it is subsumed within the claim for trespass.

Trespass law is complex in California because the California Supreme Court has held that the California Constitution accords a higher level of free speech protection than does the First Amendment of the federal Constitution. *See Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 908–09, 153 Cal.Rptr. 854, 859, 592 P.2d 341, 346 (1979), *aff'd,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980).

■ Plaintiff's trespass claim is a bit too broad. Planned Parenthood has a straightforward trespass claim as to defendants' alleged obstruction of access to the clinic. However, plaintiff asserts that the picketers' mere *presence* on the private walkway in front of the Westlake Shopping Center and on the parking areas in front of and behind the Center, automatically constitutes trespass. This is not the case. The California Supreme Court has held that private shopping malls are public forums in which protestors are entitled to exercise peacefully their right to free speech. *Id.; In re Lane,* 71 Cal.2d 872, 79 Cal.Rptr. 729, 457 P.2d 561 (1969). Although technically

privately owned, these areas have been opened up to the public in that tenants' customers are allowed to use them. Thus defendants' mere *presence* on the walkway and parking areas is insufficient grounds to assert a trespass claim.

■ The key word, however, is "peaceful." Where protestors disrupt the private owner's operation of his business and interfere with the rights of others, courts are entitled to impose reasonable content-neutral "time, place, and manner" restrictions on their conduct under both the First Amendment and the California Constitution. *Grayned v. City of Rockford,* 408 U.S. 104, 115–16, 92 S.Ct. 2294, 2302–03, 33 L.Ed.2d 222 (1972); *Portland Feminist Women's Health Center v. Advocates for Life, Inc.,* 859 F.2d 681, 685–86 (9th Cir.1988); *Robins,* 23 Cal.3d at 910–11, 153 Cal.Rptr. at 860, 592 P.2d 341; *Chico Feminist Women's Health Center v. Scully,* 208 Cal.App.3d 230, 244, 256 Cal.Rptr. 194, 201–02 (1989). The injunction granted in this case is content-neutral. The only arguably content-based restriction it contains is a bar on threats of physical touching. It does not bar defendants' protesting, but controls it so as to balance the rights of both sides. Because California law protects defendants' right to free speech in private shopping centers, the injunction does not bar defendants' right to use the walkway and parking areas per se, but creates a "free zone" which defendants may not enter. As it so happens, this zone, which gives Planned Parenthood and its patients some breathing space, extends over the walkway in front of the clinic and into part of the parking areas.

The balance of the hardships tips sharply in Planned Parenthood's favor, notwithstanding defendants' claim to the contrary. The ability of the clinic to function on Saturdays is continually disrupted by the protests; women enter the clinic extremely distraught; and many women seeking abortions are unable to go through with them or are forced to reschedule because of defendants' activities. It is true that these women are not entitled to be insulated from defendants' message, *ie.* that abor-

tion is immoral, but the manner in which defendants convey this message is unacceptable.

The hardship placed on defendants by the Preliminary Injunction is minimal because it is narrowly tailored and does not unduly restrict defendants' first amendment rights.

It should be noted that the Court itself has actually inspected the areas shown on the diagram attached to the Preliminary Injunction and that this was done after all parties declared they had no objection to the Court doing so. It should also be noted that this case has been scheduled for an early trial, viz. on August 6, 1991.

In light of all the foregoing, plaintiff's motion for a Preliminary Injunction has been granted as today ordered.

### PRELIMINARY INJUNCTION

Plaintiff's motion for a Preliminary Injunction was heard on May 23, 1991. The Court has carefully considered all written and oral submissions by the parties. Good cause appearing, the Court now issues this Preliminary Injunction.

IT IS HEREBY ORDERED that, pending trial on the merits, defendants Operation Rescue of California, James Robinson, Dorothy Ann Connolly, Charles Metzger, and Nancy Murray, each and all of them, as well as all their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with any or all of them, are hereby enjoined and restrained directly or indirectly from committing or furthering the commission of any and all of the following acts:

1. Blocking or obstructing any person's ingress to or egress from Planned Parenthood's Clinic, maintained and operated by plaintiff at 219 Southgate Avenue, Daly City, California;

2. Demonstrating, picketing, distributing literature, or counseling within twenty-five (25) feet of any entrance to said Clinic;

3. Blocking or obstructing the ingress or egress of any vehicle to or from any parking area in front of or behind said Clinic;

4. Obstructing or impeding the movement of any person between any vehicle and said Clinic, or of any person using the walkway designated on the attached diagram;

5. Approaching any person once such a person has stated that he or she does not wish to be approached;

6. Shouting, chanting, or otherwise producing loud noises which can be heard within said Clinic;

7. Physically touching, threatening to physically touch, or shouting at any individual entering or leaving said Clinic;

8. Disturbing the peace or otherwise violating any local or state laws, regulations, or ordinances.

No person who has notice of this Preliminary Injunction shall fail to comply with its letter and spirit nor shall any person subvert its letter or spirit by any sham, indirection, or other artifice.

The Court retains jurisdiction to modify this injunction at any time and from time to time on its own motion or upon the motion of any party in the interest of effectuating its intendments or in the interest of furthering the ends of justice under all applicable law.

This injunctive Order shall not issue until plaintiff has posted security in the amount of $1,000, cash or corporate surety, with the Clerk of this Court for the payment of such costs and damages as may be incurred by any party to this action who is found to have been wrongfully enjoined or restrained.