UNITED STATES of America, Appellee,

v.

Raymond BLEDSOE, Appellant.

No. 83–1670.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1983.

Decided Feb. 29, 1984.

Albert Moskowitz, Asst. Federal Public Defender, W.D.Mo., Christopher C. Harlan, Atty., Federal Public Defender's Office, W.D.Mo., Kansas City, Mo., for appellant.

Robert G. Ulrich, U.S. Atty., Thomas M. Larson, Asst. U.S. Atty., Kansas City, Mo., Wm. Bradford Reynolds, Asst. Atty. Gen., Walter W. Barnett, Margaret P. Spencer, Attys., Dept. of Justice, Washington, D.C., for appellee.

Before ROSS, ARNOLD and BOWMAN, Circuit Judges.

ROSS, Circuit Judge.

The appellant, Raymond Bledsoe, was charged with a violation of 18 U.S.C. § 245(b)(2)(B). The case was tried to a jury and a guilty verdict was returned.[1] The appellant was sentenced to life in prison and he appeals. We affirm.

Considered in the light most favorable to the government, the facts were these: On the evening of November 4, 1980, Raymond Bledsoe and two of his four roommates, Roy Loyd and James Graham, left their suburban house to go to Liberty Memorial Park in Kansas City, Missouri. A party was in progress at the time they left the house. The appellant and his companions regularly went to Liberty Park to "harass homosexuals." On his way out the appellant picked up a dowel rod and put it in the car. A baseball bat was already on the back seat. The appellant drove to the park.

At the park, the three went to the restrooms adjacent to a large baseball field. The appellant and Loyd entered the men's restroom and Graham stood by outside. Inside, the appellant began to wave the dowel rod at a white male who had been using the urinal. The appellant struck him on the back of the head with the dowel rod, breaking it in the process, and the man ran out of the bathroom. The appellant and Loyd followed him outside and watched him run away. The appellant did not give chase.

The appellant told his companions that somebody was in the other restroom and he and Loyd went into the women's bathroom. The appellant had the baseball bat in his hand. Stephen Harvey, a black man, was in the restroom sitting on a stool with his pants down to his knees. Loyd turned away as the appellant hit Harvey with the baseball bat. Harvey ran out of the restroom and the appellant pursued, continuously striking him with the baseball bat. Harvey, who had not been able to pull up his pants, made it out to the middle of the baseball field where he tripped and rolled over on his back. The appellant stood over Harvey and using an overhand swing, repeatedly struck him on the top of his head.

---

1. The Honorable Scott O. Wright, United States District Judge, presiding.

The blows crushed Harvey's skull and caused his death.

Before leaving the park, the appellant checked to see if Stephen Harvey was breathing. He then told his companions "I think I killed him." The appellant drove back to the party and while crossing a bridge threw the baseball bat into a river. Loyd, Graham and the appellant made a "pact" never to say anything about the killing. Several people at the party saw the appellant arrive covered with blood. The appellant went into the bathroom and was followed by Gary Adams. In the bathroom the appellant told Adams he had killed a "black faggot," hitting the "black guy" on the head with a baseball bat, and that Loyd and Graham had to "pull him off from the guy while he was still hitting him".

Stephen Harvey was discovered in the park the next morning. The state police were unable to arrest anyone until February of 1981 when Gary Adams came forward and told the police about Loyd, Graham and the appellant's involvement. All three men were arrested but only the appellant was charged with murder. Loyd and Graham pled guilty to assault charges in exchange for testimony against the appellant. The appellant was acquitted after trial before a jury in the Missouri State Court System. A federal investigation followed the state trial and as a result the appellant was indicted for willfully interfering with Stephen L. Harvey because of his race and because he was enjoying privileges and facilities provided and administered by Kansas City, Missouri, a violation of 18 U.S.C. § 245(b) (1976). He was tried, convicted, and sentenced to life in prison.

The first issue raised by the appellant concerns the constitutionality of 18 U.S.C. § 245(b). That statute reads, in pertinent part:

> (b) Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—
>
> * * * * * *

(2) any person because of his race, color, religion or national origin and because he is or has been—

* * * * * *

(B) participating in or enjoying any benefit, service, privilege, program, facility or activity provided or administered by any State or subdivision thereof;

The appellant argues that Congress relied on the fourteenth amendment in enacting section 245 and because the statute as applied reaches private action, this court must find that it is unconstitutional. The government argues that the question of whether Congress can reach purely private action under the fourteenth amendment has been answered by this court in *Action v. Gannon,* 450 F.2d 1227 (8th Cir.1971) (*en banc*).

In *Action, supra,* two private organizations concerned with the promotion of the economic welfare of black citizens conspired to systematically disrupt religious services at a Catholic cathedral. The church sued in federal district court under 42 U.S.C. § 1985(3) and requested an injunction prohibiting further disruptions. In concluding that Congress had the power to reach the conspiracy under sections 1 and 5 of the fourteenth amendment, the court noted:

> We must answer two questions in order to reach this result: (1) Does the Fourteenth Amendment protect the First Amendment rights involved here, and (2) if so, does it protect those rights against state action only or against private actions as well?

*Id.* at 1233. This court, relying on *United States v. Guest,* 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) answered both questions in the affirmative and allowed an injunction to issue. *Action, supra,* at 1235.

The appellant argues that the recent case *United Brotherhood of Carpenters & Joiners v. Scott,* —— U.S. ——, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) overrules *Action, supra.* In *Scott,* a group of union workers conspired to intimidate nonunion laborers and force an employer to hire union members. Two employees and the employer sued the union and individual members un-

der 42 U.S.C. § 1985(3) for conspiring to deprive them of their rights to associate freely. The Supreme Court held that the plaintiffs did not have a cause of action under section 1985(3).

> Contrary to the Court of Appeals, however, we conclude that an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state. We also disagree with the Court of Appeals' view that there was present here the kind of animus that § 1985(3) requires.

*Id.* at 3356–57. The Court expanded on this statement, observing that:

> The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere, and here the right claimed to have been infringed has its source in the First Amendment. Because that Amendment restrains only official conduct, to make out their § 1985(3) case, it was necessary for respondents to prove that the state was somehow involved in or affected by the conspiracy.

*Id.* at 3358. The issue of whether the first question addressed by the Court in *Action, supra,* was properly posed and answered in light of *Scott, supra,* is not before us and we need not reach it. In our opinion, however, *Scott* left untouched this court's determination that Congress could reach purely private action under the *fourteenth* amendment. The Supreme Court's ruling in *Scott* addressed the question of what constituted a cause of action under 42 U.S.C. § 1985(3), and not what limits the Constitution may impose upon congressional power to create such statutes. The statute at issue in this case is fundamentally different from section 1985(3) in that the statute itself clearly creates a substantive right: In this case the right to enjoy state provided benefits free from private harassment motivated by racial animus. Because the pertinent section of *Action, supra,* remains viable authority, this panel is unwilling to accept the appellant's invitation to reconsider a decision made by the court en banc.

In addition to the binding precedent which upholds congressional power to reach this type of activity under the fourteenth amendment, in our opinion the statute is constitutional as applied under the thirteenth amendment. It is abundantly clear that under this amendment Congress can reach purely private action. *Jones v. Mayer Co.,* 392 U.S. 409, 438–39, 88 S.Ct. 2186, 2202–03, 20 L.Ed.2d 1189 (1968). Nor can there be doubt that interfering with a person's use of a public park because he is black is a badge of slavery.

> Some badges of slavery remain today. While the institution has been outlawed, it has remained in the hearts and minds of many white men. Cases which have come to this Court depict a spectacle of slavery unwilling to die. * * * Negros have been forced to use segregated facilities in going about their daily lives, having been excluded from * * * public parks, *New Orleans Park Improvement Assn. v. Detiege,* 358 U.S. 54, 79 S.Ct. 99, 3 L.Ed.2d 46 (1958); * * * public beaches, *Mayor of Baltimore v. Dawson,* 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774 (1955);

*Id.* at 445, 88 S.Ct. at 2206 (Douglas, J., concurring). We therefore reject the appellant's argument and hold that 18 U.S.C. § 245(b) does not exceed the scope of power granted to Congress by the Constitution.

The appellant next contends that the instructions given to the jury did not set out the necessary elements of the crime with sufficient clarity, and that the conviction must be overturned on this basis. This issue centers on the question of motive. Section 245(b) clearly states that the interference must have been prompted by the victim's race. The following were among the instructions read to the jury:

> Instruction No. 16. Five essential elements are required to be proved beyond a reasonable doubt in order to establish the offense charged in the indictment.
>
> * * * * * *
>
> Third: The defendant must have acted because Stephen Harvey was a black man and because he was or had been enjoying

the facilities of Penn Valley Park, a public park administered by Kansas City, Missouri.

\* \* \* \* \* \*

and Instruction No. 18:

\* \* \* \* \* \*

You are instructed that every citizen, regardless of race, color, religion or national origin, has the right to enjoy the public parks. If you find beyond a reasonable doubt that Penn Valley Park was administered by the city of Kansas City, Missouri, and that the defendant willfully injured, intimidated, or interfered with Stephen Harvey because he was a black man and because he was using Penn Valley Park, this element of the offense would be established. Furthermore, if you find that the defendant had the motivation I have just described, the offense charged would be complete even if the defendant had other reasons for doing what he did, such as personal anger, or hatred for homosexuals, or a desire to commit robbery. In other words, the presence of other motives, given the existence of the defendant's motive to interfere with the victim's use of the park, does not make his conduct any less a violation of 18 United States Code 245.

■ The appellant argues that for a violation to be established under section 245 the substantial motivating factor for his actions must have been the victim's race and these instructions are inadequate because a conviction could be returned even if the interference was motivated only incidentally by race. We do not agree. The district court clearly stated that the prosecution must prove, beyond a reasonable doubt, that the appellant attacked Stephen Harvey because of his race. The clear implication from these instructions is that a substantial motivating factor must have been race. The additional information concerning the possible presence of other motivating factors simply restates the law on mixed motives. *United States v. Johns,* 615 F.2d 672, 675 (5th Cir.), *cert. denied,* 449 U.S. 829, 101 S.Ct. 95, 66 L.Ed.2d 33 (1980); *United States v. Ellis,* 595 F.2d 154, 162 (3d Cir.1979), *cert. denied,* 444 U.S. 838, 100 S.Ct. 75, 62 L.Ed.2d 49 (1980).

■ The appellant also argues that the district court erred in denying his motion for judgment of acquittal. The appellant argues that the evidence established, if anything, that he beat Stephen Harvey to death because he believed him to be a homosexual and not because he was black. We do not agree. The government introduced a great deal of evidence which established that the appellant had a history of violently attacking blacks, and further, that this attack in particular was motivated by race hatred. The record contains several admissions made by the appellant:

He said that he had once killed a nigger queen.

And

A. He told me that he had killed Stephen Harvey.

Q. Did he tell you why?

A. Because he was a black fag and he made a pass at me.

In addition to the admissions, the government introduced circumstantial evidence of a highly probative nature. The white male the appellant believed to be a homosexual was assaulted and then allowed to escape after a single blow was struck. Stephen Harvey, on the other hand, was beaten, pursued, caught and killed. These disparate fates indicate that more than a hatred for homosexuals was operating when the appellant struck the blows which killed Stephen Harvey. When this evidence, together with the inferences which may fairly be drawn from it, is viewed in the light most favorable to the government, we must conclude that the motion was properly denied. *United States v. Beck,* 662 F.2d 527, 530–31 (8th Cir.1981).

■ The appellant's final contention, that this prosecution was barred because of an acquittal on state charges based on the same acts, is meritless. "Successive prosecutions by state and federal governments are not barred by the double jeopardy clause of the fifth amendment. \* \* \* We

hold here, as we did in *Turley v. Wyrick,* [554 F.2d 840, 841 (8th Cir.1977)], that the doctrine remains valid." *United States v. Brown,* 604 F.2d 557, 559 (8th Cir.1979).

The district court is therefore affirmed.