Warna Irene LEWIS, Appellant,

v.

PEARSON FOUNDATION, INC., Robert J. Pearson, Kathleen Pearson, John M. Byers, Mother and Unborn Baby Care of St. Louis, d/b/a A–A–A Pregnancy Problem Center, Rita Roberson, Richard Chrismer, Marie Becker, Mary Elizabeth Kretschmer, Susan Schlesinger, Thomas Rohan, and Elizabeth Doe, a fictitious name, Appellees.

No. 88–1293.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 22, 1988.

Decided July 10, 1990.

Rehearing Granted Opinion Vacated Sept. 7, 1990.

Tom Mendelson, St. Louis, Mo., for appellant.

David C. Drury, St. Louis, Mo., for appellees.

Before JOHN R. GIBSON, Circuit Judge, and FLOYD R. GIBSON and ROSS, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Warna Lewis, pregnant and desiring an abortion, looked in the Yellow Pages directory under "Abortion Information and Services" and found an advertisement for the "AAA Pregnancy Problem Center" in St. Louis, Missouri. After Lewis discovered

that the Center was a mock abortion clinic, run by persons opposed to abortion, she brought this action under 42 U.S.C. § 1985(3) (1982). Lewis alleges that she was injured by a private conspiracy in which the staff of the Center visited a "lacerating psychological attack" upon her in an attempt to prevent her and others like her from carrying out the decision to have an abortion. On defendants' motion to dismiss, the district court held that while section 1985(3) supports actions against private conspiracies, Lewis had not sufficiently alleged that the defendants possessed the class-based, invidiously discriminatory animus required by section 1985(3). On appeal, Lewis contends that she, as a member of a class of pregnant women desiring an abortion, is entitled to assert a claim under the statute. Because we conclude that Lewis has properly asserted a claim under section 1985(3), we reverse and remand for further proceedings.

Lewis' complaint alleges that on September 29, 1986, she contacted the Pregnancy Problem Center after reading its advertisement in the Southwestern Bell Yellow Pages directory under the heading "Abortion Information and Services." Lewis was late in her first trimester of pregnancy and wanted an abortion. In reply to Lewis' telephone query, a staff member at the Center stated that they would "help her all they could," and invited Lewis to come in to take a free pregnancy test. Lewis scheduled an appointment for October 1, 1986.

When Lewis arrived for her appointment, she was directed to produce a urine sample for the pregnancy test. Lewis was then ushered into a room where an anonymous staff member, designated "Elizabeth Doe" in Lewis' complaint, activated a slide presentation before excusing herself. The color slides depicted scenes which were said to illustrate the abortion process. These included pictures of dismembered fetuses and abortions being performed by means of crude-appearing instruments. The slide show also contained intermittent family scenes.

Lewis alleges that after viewing this presentation, she confronted Doe with her feelings of anger, anxiety, and distress. After Doe suggested that Lewis rely on religious faith, Lewis insisted that she still wanted an abortion. Doe finally offered to arrange an abortion with "a respectable doctor." Upon Lewis' acceptance of the offer, Doe left the room and then returned with a note indicating that Lewis had an appointment on October 3 with a doctor at St. John's Mercy Medical Center in St. Louis.

When Lewis arrived at the hospital on October 3, she discovered that it was a Roman Catholic institution and that its doctors did not perform abortions. She obtained an abortion elsewhere one week later. Roughly a month thereafter, on November 11, Doe telephoned Lewis, stating that she had called to find out when the baby was due and to check whether "everything was alright" with Lewis. Lewis asserts that this call upset her greatly, as did the harassment she experienced at the hands of the Pregnancy Problem Center.

Lewis proceeded to sue the Pearson Foundation, Inc., which organized and ran the Pregnancy Problem Center, and several other defendants involved in the operation of the clinic, including staff member Doe. Lewis alleges that they conspired to deprive her of the equal protection of the law through denial of her "constitutionally granted rights of privacy, autonomy, personhood, and liberty in exercising a choice as to the continuation or discontinuation of her pregnancy." Lewis further claims that the conspiracy was "motivated by an invidiously discriminatory animus toward a class of women each of whom, like [Lewis] herein, has made the decision in answer to an unwanted pregnancy to terminate the pregnancy by a lawful abortion." Lewis asserts that she has been injured in suffering mental distress, torment, anguish, morbid recall, sadness, embarrassment, humiliation, and anger. She seeks actual damages of $150,000 and punitive damages of up to $10 million.

Lewis also alleges that despite receiving complaints about the methods of fake abor-

tion clinics, and specifically those of the Pregnancy Problem Center, the Missouri Attorney General encouraged appellees' alleged conspiracy by publicly announcing that their advertising did not constitute misrepresentation. Lewis alleges that the Attorney General aided the conspiracy by refusing to invoke broad state statutory and common law remedies available to prevent the use of deceptive advertising practices, and that he did this either because of "his personal concurrence" with the acts of the Pregnancy Problem Center and other "mock abortion clinics," or because of "his desire not to displease any element of his pro-life constituency."

Various defendants filed motions to dismiss the complaint for failure to state a claim. They argued that while Lewis had asserted her action against private persons, 42 U.S.C. § 1985(3) requires that a plaintiff allege state action in order to assert fourteenth amendment claims for violations of rights to liberty and privacy. Granting these motions to dismiss, the district court relied in particular on *Roe v. Abortion Abolition Society*, 811 F.2d 931 (5th Cir.), *cert. denied*, 484 U.S. 848, 108 S.Ct. 145, 98 L.Ed.2d 101 (1987), which rejected a claim under section 1985(3) charging defendants with entering into a religiously motivated conspiracy to deny plaintiffs' rights of education, freedom of choice, privacy, and travel. *Id.* at 937. The district court concluded that because Lewis alleged only that defendants acted out of moral-religious beliefs similar to those supposedly held by the defendants in *Abortion Abolition Society*, her complaint failed to establish the class-based discriminatory animus against which section 1985(3) was intended to protect. The court also held that Lewis' plaintiff class, composed of women desiring abortions, did not possess a unifying common

characteristic distinguishing it from the remainder of the population.

On appeal, Lewis argues that her complaint, alleging conspiracy against her as a woman for the purpose of denying her and other women their right under the fourteenth amendment to choose to have an abortion, states a valid claim for relief under 42 U.S.C. § 1985(3). The Pearson Foundation and other defendants appeal, urging, among other things, that *Roe v. Wade* is wrongly decided.

### I.

We first treat appellees' argument that *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and the case law developed under it, are wrongly decided. Since the case before us was argued, the Supreme Court has decided two cases which have recognized the continuing viability of *Roe v. Wade*. In *Webster v. Reproductive Health Services*, —— U.S. ——, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), Chief Justice Rehnquist stated that the case afforded "no occasion to revisit the holding of *Roe*," *id.* 109 S.Ct. at 3058, despite the urging of Justice Scalia, in a separate concurrence, to overrule *Roe*, *id.* at 3064 (Scalia, J., concurring in part and concurring in the judgment). *See also Hodgson v. Minnesota*, —— U.S. ——, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990). Thus, *Roe v. Wade* both controls our decision and establishes the fundamental rights upon which Lewis' claim is based.

### II.

■ Appellees argue that Lewis must allege state action in order to assert her claim under 42 U.S.C. § 1985(3).[1] In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that section 1985(3), on its face,

---

1. 42 U.S.C. § 1985(3) provides:

 If two or more persons in any State or Territory conspire ..., for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... [and] in [such] case of conspiracy ..., if one or more persons engaged therein do, or cause to be done, any

act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

omits any requirement of state action and that the statute could, in some situations, reach wholly private conspiracies. *Id.* at 97, 101, 91 S.Ct. at 1796, 1797. Since *Griffin*, the Court has significantly refined the scope of the cause of action established by 42 U.S.C. § 1985(3) by stating that:

> § 1985(3) ... "provides no substantive rights itself" to the class conspired against. *Great American Federal Savings & Loan Assn. v. Novotny*, 442 U.S. 366, 372 [99 S.Ct. 2345, 2349, 60 L.Ed.2d 957] (1979). The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere, and here the right claimed to have been infringed has its source in the First Amendment. Because that Amendment restrains only official conduct, to make out their § 1985(3) case, it was necessary for respondents to prove that the State was somehow involved in or affected by the conspiracy.

*United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). To determine whether Lewis must plead state action in order to prosecute her claim under section 1985(3), therefore, we must look not to the statute itself but rather to the nature of the underlying constitutional right which she seeks to assert through the statute. In *Griffin*, for example, the rights enforced were derived from the thirteenth amendment and the constitutional right of interstate travel, which are assertable against private interference. 403 U.S. at 104–06, 91 S.Ct. at 1799–1800. In the instant action, the right asserted by Lewis finds its source not in the first amendment, as was the case in *Scott*, but instead in the rights of privacy recognized by *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147

(1973). In *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), the Supreme Court characterized *Roe v. Wade* thus:

> The constitutional underpinning of *Wade* was a recognition that the "liberty" protected by the Due Process Clause of the Fourteenth Amendment includes not only the freedoms explicitly mentioned in the Bill of Rights, but also a freedom of personal choice in certain matters of marriage and family life. This implicit constitutional liberty, the Court in *Wade* held, includes the freedom of a woman to decide whether to terminate a pregnancy.

*Id.* at 312, 100 S.Ct. at 2686 (footnote omitted); *see also City of Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 420 n. 1, 426–27, 103 S.Ct. 2481, 2487 n. 1, 2490–91, 76 L.Ed.2d 687 (1983); *Whalen v. Roe*, 429 U.S. 589, 598–99 n. 23, 97 S.Ct. 869, 875–76 n. 23, 51 L.Ed.2d 64 (1977); *Roe v. Wade*, 410 U.S. at 152–53, 93 S.Ct. at 726–27. We have similarly characterized the right established by *Roe v. Wade* as "the constitutional freedom of a woman to decide whether to terminate her pregnancy." *Nyberg v. City of Virginia*, 667 F.2d 754, 756 (8th Cir.1982), *cert. denied*, 462 U.S. 1125, 103 S.Ct. 3102, 77 L.Ed.2d 1358 (1983).

While *Scott* makes clear that section 1985(3) creates no substantive rights,[2] *Roe v. Wade* establishes certain fundamental rights which have been proclaimed with great force by the Supreme Court:

> Few decisions are more personal and intimate, more properly private, or more basic to individual dignity and autonomy, than a woman's decision—with the guidance of her physician and within the limits specified in *Roe*—whether to end her

---

**2.** Although *Scott* discussed state action in section 1985(3) cases at length, the Court finally concluded that it would neither remand to the court of appeals nor decide itself whether there was a conspiracy to deprive the plaintiffs of rights, privileges or immunities under the state law, or those protected from private action by the federal Constitution or statutory law. Instead, the Court moved on to the dispositive ground that there was no racial or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions. 463 U.S. at

833–39, 103 S.Ct. at 3358–62. The ultimate conclusion of *Scott* was that section 1985(3) could not be construed to reach conspiracies motivated by economic or commercial animus. Commentators have observed that its discussion of state action is dictum. *See* Gormley, *Private Conspiracies and the Constitution: A Modern Vision of 42 U.S.C. Section 1985(3)*, 64 Tex.L. Rev. 527, 561 (1985); Note, *The Class–Based Animus Requirement of 42 U.S.C. § 1985(3): A Limiting Strategy Gone Awry?*, 84 Mich.L.Rev. 88, 91 & n. 25 (1985).

pregnancy. A woman's right to make that choice freely is fundamental. Any other result, in our view, would protect inadequately a central part of the sphere of liberty that our law guarantees equally to all.

*Thornburgh v. American College of Obstet. & Gyn.*, 476 U.S. 747, 772, 106 S.Ct. 2169, 2185, 90 L.Ed.2d 779 (1986) (citations omitted). It is these rights which are incorporated under *Scott* into section 1985(3), and invoked by Lewis in her suit against the Pearson Foundation and associated parties. Appellees cite no Supreme Court or appellate cases limiting these rights to protect against only official conduct, and we decline to place any such limitation on them here.[3]

We further recognize that this court in *Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971) (en banc), clearly held that first amendment rights of freedom of assembly and worship are protected not only against state action but also against private action. *Id.* at 1235. We relied heavily on the view expressed by six Justices in *United States v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), that Congress has the power under section 5 of the fourteenth amendment to enforce the rights guaranteed by that amendment against private conspiracies. *Action*, 450 F.2d at 1235. While the question arises as to whether this holding of *Action* survives *Scott*, this court in *United States v. Bledsoe*, 728 F.2d 1094 (8th Cir.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984), after analyzing *Scott*, concluded that "*Scott* left untouched this court's determination that Congress could reach purely private action under the fourteenth amendment." *Id.* at 1097 (emphasis removed). *Bledsoe* concluded that *Action* remains viable authori-

ty and underscores our conclusion that official conduct is not required in this case. Finally, we observe that *Roe v. Wade* finds support for the existence of personal privacy interests and freedom of personal choice in marriage and family life in the first, fourth, fifth and ninth amendments, as well as in the fourteenth. By their nature, these interests would be meaningless were they to be protected only from interference by the state. We therefore hold that 42 U.S.C. § 1985(3) does not contain a state action requirement where, as here, a plaintiff's claim finds its course in the right announced in *Roe v. Wade*.

■ Alternatively, Lewis' section 1985(3) claim is supported by her allegations that the Missouri Attorney General participated in the conspiracy. She alleges that the state Attorney General refused to employ the state statutory and common law remedies at his disposal to prevent deceptive advertising practices used by the Pregnancy Problem Center. Moreover, she alleges that the Attorney General actively encouraged appellees' conspiracy by pronouncing that the Center's advertising does not constitute misrepresentation. She alleges that he took these actions solely because of "the highly charged controversy surrounding legalized abortion" and because he either personally concurs with the Center's activities or desires "not to displease his pro-life constituency."

In order to be actionable under 42 U.S.C. § 1985(3), a conspiracy must "aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Scott*, 463 U.S. at 834–35, 103 S.Ct. at 3359–40 (quoting *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798). *Scott* specifically recognizes that such rights can arise from state law. *Id.* 463 U.S. at 833, 103 S.Ct. at 3358. Lewis'

---

3. *But see Portland Feminist Women's Health Center v. Advocates for Life, Inc.*, 681 F.Supp. 688, 691 (D.Or.1988):

The federal constitutional right to choose abortion is derived directly from the right to personal privacy and is rooted in the First, Fourth, Fifth, Ninth and Fourteenth Amendments. *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). This right to personal privacy is founded upon the Fourteenth Amendment's concept of personal

liberty and its restriction upon state action. *Id.* at 153, 93 S.Ct. at 726–27. The recognition of a constitutional right to privacy guarantees to women the right to make certain fundamental intimate choices without governmental interference. *See Thorne v. City of El Segundo*, 802 F.2d 1131, 1138 (9th Cir.1986). It does not, however, protect that right from private interference. *Chico Feminist Women's Health Center v. Butte Glenn Medical Soc'y*, 557 F.Supp. 1190, 1197 (E.D.Cal.1983).

complaint can be read to describe a conspiracy by the Attorney General to deprive Lewis of the even-handed enforcement of the Missouri consumer protection law, *see* Mo.Rev.Stat. §§ 407.010–.130 (1986), and other legal protections prohibiting or remedying deceptive advertising practices.

While we initially observe that any failure to prosecute by the Attorney General does not fulfill a requirement of "state action" under section 1985(3), *cf. Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164–66, 98 S.Ct. 1729, 1737–39, 56 L.Ed.2d 185 (1978) (holding that, under 42 U.S.C. § 1983, a state's mere acquiescence in private action does not convert action into that of the state), Lewis has alleged more than mere inaction by the Attorney General. As stated above, the complaint alleges that the Attorney General actively encouraged and participated in the conspiracy. We therefore conclude that Lewis' complaint adequately sets forth a conspiracy including state involvement to deprive her of the equal protection of state law. On this basis her complaint is sufficient to withstand a motion to dismiss.

■ We also observe that Lewis' complaint may be sufficient to withstand a motion to dismiss on the theory that the appellees have conspired to deny her "equal enjoyment of rights secured by the law to all." *Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798. Since section 1985(3) contains no independent state action requirement, it is possible that, if the rights at issue give rise to a private right of action under state law, state involvement is not required under section 1985(3). *See Griffin,* 403 U.S. at 101–02, 91 S.Ct. at 1797–98. The rights involved could arise from applicable state law. Recently the Missouri Court of Appeals held that a plaintiff had sufficiently stated a claim against the executive director of a pregnancy center for intentional infliction of emotional distress based upon "outrageous abortion counseling." *Boes v. Deschu,* 768 S.W.2d 205, 208–09 (Mo.Ct.App.1989). The conduct alleged in *Boes* was very similar to the allegations in this case. Both involve women discouraged by the defendants from seeking an abortion. The right under state law to be free from such intentional infliction of emotional distress can be the basis for an action under section 1985(3).

We find particularly insightful Professor Ken Gormley's article entitled *Private Conspiracies and the Constitution: A Modern Vision of 42 U.S.C. Section 1985(3),* 64 Tex.L.Rev. 527 (1985), which explores the history of the Ku Klux Klan act of 1871, the forerunner of section 1985(3), and its principal concern with reaching the actions of private conspiracies to strip members of a protected class of the equal protection of the laws. *Id.* at 569. As Professor Gormley points out:

[S]ection 1985(3)—unlike section 1983—does not require the deprivation of some constitutional or federally protected right. It speaks only of the deprivation of the equal protection of the laws. Thus, the rights at stake in section 1985(3) cases need not be the more familiar first or fourteenth amendment guarantees, or any other right found in the United States Constitution. Instead, the right at stake will normally be the equal protection of *state* laws—trespass laws, contract laws, property laws, and tort laws. These sorts of rights have a life all their own, with or without state action. Properly framing a complaint in this fashion prevents the obvious *faux pas* committed by the litigants in *Scott*— namely, drawing up a complaint that rests on rights which do not even exist. Properly framed, a complaint alleging a conspiracy by private individuals to strip a member of some traditionally disadvantaged class of the equal protection of the laws states a valid claim under section 1985(3). In a world where state action and private conduct often intersect, Congress is empowered to reach such discriminatory conduct to assure that "equal protection" is not just a phrase in the back of the Constitution, but something which all groups in America can actually enjoy.

*Id.* at 587 (emphasis in original).

On remand, the district court should explore whether Lewis is able to demonstrate

that any state law establishes rights that support her claims. At this point in the litigation, however, we cannot say that there is not a viable cause of action stated under 42 U.S.C. § 1985(3) as interpreted in *Griffin* and *Scott*.

## III.

■ We next turn to the question of whether Lewis has adequately pleaded the existence of class-based discriminatory animus. *See Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798. In *Griffin*, the Supreme Court expressly reserved the question of whether a conspiracy motivated by invidiously discriminatory intent other than racial bias is actionable under section 1985(3). *Id.* at 102 n. 9, 91 S.Ct. at 1798 n. 9. Although in *Scott* the Supreme Court held that economic and commercial animus fails to satisfy the motivation requirement of section 1985(3), the Court again did not restrict the protections of section 1985(3) to only victims of racism. *See Scott*, 463 U.S. at 835, 103 S.Ct. at 3359. In her complaint, Lewis alleges that she has suffered discrimination against a class composed of "women each of whom, like [Lewis], has made the decision in answer to an unwanted pregnancy to terminate by lawful abortion." Lewis argues that we are bound to recognize a cause of action based on such allegations in light of precedent in which we have recognized that the classes protected by section 1985(3) extend beyond those defined only by race.

In *Action*, 450 F.2d at 1232–35, for example, we extended section 1985(3) protection to members of a predominantly white religious group whose services were disrupted by blacks demanding that the parish alter its investment policies.[4] In *Means v. Wilson*, 522 F.2d 833 (8th Cir.1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976), we held that the statute protects the right to vote in Indian tribal elections against interference from private conspiracies. *Id.* at 839. In *Conroy v. Conroy*, 575 F.2d 175 (8th Cir.1978), we held that a woman had properly pleaded jurisdiction under the statute by alleging discrimination on the basis of her sex as well as race. *Id.* at 177. We have summarized the relevant standard in this way:

> Most courts have extended protection to other suspect-like classes, such as those based on religion, or those defined by ideology or the exercise of a fundamental right. The ultimate test, of course, is whether the classification is sufficiently "invidious" so as to fall within the statute's ambit.

*Shortbull v. Looking Elk*, 677 F.2d 645, 649 (8th Cir.) (citations omitted), *cert. denied*, 459 U.S. 907, 103 S.Ct. 211, 74 L.Ed.2d 168 (1982). We have no doubt that the discriminatory classification alleged by Lewis is sufficiently invidious so as to merit statutory protection.[5] *See id.* at 648 (the Supreme Court "has implicitly held that discrimination on the basis of sex is sufficient under the statute" (citing *Great Am. Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 389 n. 6, 99 S.Ct. 2345, 2357 n. 6, 60 L.Ed.2d 957 (White, J., dissenting))).

Recently the Second Circuit, in *New York State National Organization for*

---

4. To whatever extent our decision in *Action* was modified by *Scott*, the Supreme Court has left untouched our analysis in *Action* of class-based animus.

5. For additional instances in which courts have held that protection under 42 U.S.C. § 1985(3) extends to conspiracies to discriminate against persons based on gender, see *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir.1988); *Williams v. Rappeport*, 699 F.Supp. 501, 505–06 (D.Md. 1988); *Chambers v. Omaha Girls Club*, 629 F.Supp. 925, 942 (D.Neb.1986), *aff'd*, 834 F.2d 697 (8th Cir.1987); *Scott v. City of Overland Park*, 595 F.Supp. 520, 528–29 (D.Kan.1984); *Skadegaard v. Farrell*, 578 F.Supp. 1209, 1218–

19 (D.N.J.1984); *see also Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir.1985); *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499, 505 (9th Cir.1979). *But see Gibson v. United States*, 781 F.2d 1334, 1341 (9th Cir.1986) (interpreting *Scott* to restrict "statutory coverage to conspiracies motivated by racial bias"), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987); *Harrison v. KVAT Food Management*, 766 F.2d 155, 160–63 (4th Cir.1985) (statute does not protect Republicans as a class); *Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1177 (10th Cir. 1983) (statute does not protect class of handicapped persons), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984).

*Women v. Terry,* 886 F.2d 1339 (2d Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990), decided a case which supports our holding here. The court affirmed the issuance of an injunction against "Operation Rescue" activities designed to deny access to abortion clinics. *Id.* at 1364. The court held that women were a protected class for the purposes of section 1985(3). *Id.* at 1359. "As conspiracies directed against women are inherently invidious, and repugnant to the notion of equality of rights for all citizens, they are therefore encompassed under the Act." *Id.*

Appellees direct our attention to two recent Fifth Circuit cases, *Roe v. Abortion Abolition Society,* 811 F.2d 931 (5th Cir.), *cert. denied,* 484 U.S. 848, 108 S.Ct. 145, 98 L.Ed.2d 101 (1987), and *Mississippi Women's Medical Clinic v. McMillan,* 866 F.2d 788 (5th Cir.1989). The class in *Abortion Abolition Society* comprised two patients, two doctors, a legitimate abortion clinic and members of its staff, and an organization that provided escort services to the clinic. 811 F.2d at 932. Challenging protesting outside the clinic by anti-abortion activists, the plaintiffs characterized themselves as victims of a conspiracy against persons who do not share the conspirators' anti-abortion religious beliefs. *Id.* at 935. The court rejected this attempt to define a class on the basis of its absence of certain characteristics—religious beliefs opposed to abortion—that were possessed by the defendants in that case. The court concluded that in order to constitute a class within section 1985(3), the members of the protected group must "share at least some common characteristic beyond simply being victims of a conspiracy, a common characteristic that distinguishes the class from the rest of the population." *Id.* at 934.

*McMillan* affirmed the denial of a preliminary injunction in similar factual circumstances, but where the complaint pleaded discriminatory animus against a class

consisting of "women of childbearing age who seek medical attention from the [abortion clinic]." 866 F.2d at 794. The court held that the alleged defendant class was not motivated by class-based animus because their activities outside plaintiff's abortion clinic were aimed not only at the alleged class of pregnant women seeking abortions, but rather at a broad class of "men, women of all ages, doctors, nurses, staff, the female security guards, etc." *Id. McMillan* concluded its analysis by contrasting the two cases:

> Thus, if the plaintiffs in *Abortion Abolition Society* identified themselves as a class that was so over-inclusive as to be meaningless, [the abortion clinic in *McMillan* ] has designated a class that is so under-inclusive as to mischaracterize the dispute.

*Id.*

Lewis, by contrast, pleads that she is a member of a class which in relation to appellees' alleged discriminatory animus is neither overinclusive nor underinclusive. Lewis alleges that appellees' conspiracy was propelled by their invidiously discriminatory animus toward her by virtue of her membership in a class of women seeking abortions. Unlike the plaintiff class of *Abortion Abolition Society,* Lewis affirmatively alleges that appellees acted out of discriminatory animus against her based on her membership in a class of women, a class existing independently of appellees' actions. And, unlike the plaintiff class of *McMillan,* Lewis' alleged class is well-tailored. According to Lewis' complaint, those who staffed the Pregnancy Problem Center targeted women seeking abortions as their sole subject for harassment.

 We are satisfied that the class proposed by Lewis is analogous to others in which protection has been afforded under section 1985(3). We further conclude that Lewis has adequately pleaded facts sufficient to meet all other elements of a cause of action under 42 U.S.C. § 1985(3).[6]

---

**6.** Appellees also argue that Lewis' complaint fails because its allegations of "conspiracy" under 42 U.S.C. § 1985(3) are conclusory and unsupported by particular factual support. In her complaint, however, Lewis alleges that two corporations, the Pearson Foundation, Inc. and Mother and Unborn Baby Care of St. Louis, were involved in the formation and operation of

*See generally Griffin,* 403 U.S. at 102–03, 91 S.Ct. at 1798–99. We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting.

I respectfully dissent because I believe that Lewis has not adequately stated a claim under section 1985(3). She has not shown that the state was involved in or affected by the conspiracy, and according to *United Brotherhood of Carpenters & Joiners of America v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), such a showing is necessary where, as here, the right allegedly violated is itself a right protected only against governmental rather than private interference. *Id.* at 833.

The majority apparently considers *Scott* to be distinguishable in that *Scott* involved an alleged violation of First Amendment rights, which are assertable only against governmental interference, while the instant case involves an alleged violation of the privacy right recognized in *Roe v. Wade,* which, the majority claims, is assertable against wholly private conduct. I disagree. The privacy right announced in *Roe v. Wade* is based primarily on the Due Process Clause of the Fourteenth Amendment. *See Harris v. McRae,* 448 U.S. 297, 312, 100 S.Ct. 2671, 2685, 65 L.Ed.2d 784 (1980); *Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). And, it seems to me well settled and beyond dispute that the Due Process Clause protects individuals only against governmental interference and not against intrusions by private entities. *See, e.g., Scott,* 463 U.S. at 831–32, 103 S.Ct. at 3357–58 and cases cited therein. Even the language quoted by the majority to describe the Fourteenth Amendment right to privacy indicates that the right is one only against governmental

action. *See* Maj. Op. at 322 (quoting the following language from *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 106 S.Ct. 2169, 2184, 90 L.Ed.2d 779 (1986): "[o]ur cases have long recognized that the Constitution embodies a promise that a certain private sphere of individual liberty *will be kept largely beyond the reach of government."* (emphasis added)). Accordingly, I am convinced that we are bound by the Supreme Court's decision in *Scott* to require a showing of state action in this case because Lewis, like the plaintiffs in *Scott* who sought to redress First Amendment rights, bases her section 1985(3) claim on a right that is by definition a right protected only against state interference.

Moreover, I am unpersuaded by the majority's reliance on this court's decisions in *Action v. Gannon,* 450 F.2d 1227 (8th Cir. 1971) (en banc), and *United States v. Bledsoe,* 728 F.2d 1094 (8th Cir.), *cert. denied,* 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984). I do not read *Action* to hold, as the majority states, "that first amendment rights of freedom of assembly and worship are protected not only against state action but also against private action." Maj. Op. at 322. Rather, in *Action* this court held that Congress has the power under the enforcement clause of the Fourteenth Amendment to proscribe private conspiracies that infringe First or Fourteenth Amendment rights and that Congress exercised that power in enacting section 1985(3). It seems to me that the *Action* court's consideration of whether Congress has the power to reach private action through the enforcement clause reveals an implicit recognition of the basic principle that First and Fourteenth Amendment rights standing alone are indeed not assertable against wholly private conduct.

---

the Pregnancy Problem Center. We accordingly hold Lewis' complaint to be adequate in this respect.

Appellees contend that Lewis' claim must fail under *Griffin* because she has alleged no medically diagnosable injury. Without deciding whether Lewis' claim of mental distress is alone adequate under the statute, we observe that

Lewis has alleged the actual injury of losing one-and-a-half days' work.

Finally, appellee Chrismer attempts to raise a defense of privilege under the first amendment. We conclude that Lewis' complaint pleads deceptive practices and conduct sufficient to warrant further development of the record.

Further, I think it clear that *Action*'s holding that section 1985(3) can be used to redress violations of First or Fourteenth Amendment rights committed by private entities is no longer viable because this reasoning was rejected by the Supreme Court in *Scott*. And, this court's decision in *United States v. Bledsoe* is not to the contrary. The portion of *Action* that, according to *Bledsoe*, survived *Scott* is the portion in which the court in *Action* held that Congress has the power to proscribe private conduct that infringes on Fourteenth Amendment rights. *Bledsoe*, 728 F.2d at 1097. I agree that *Scott* did not disturb that particular aspect of the decision in *Action*. But whether Congress has such power is not the precise question presented by the instant case. I recognize that Congress arguably has the power under both the Fourteenth Amendment's enforcement clause and the Commerce Clause to proscribe private conduct that violates Fourteenth Amendment rights. *See Scott,* 463 U.S. at 833, 103 S.Ct. at 3358; *United States v. Guest,* 383 U.S. 745, 762, 86 S.Ct. 1170, 1180, 16 L.Ed.2d 239 (1966) (Clark, J., concurring); *id.* at 782, 86 S.Ct. at 1190 (Brennan, J., concurring and dissenting). However, I submit that that proposition does not help Warna Lewis in her effort to state a claim under section 1985(3) because that statute is not one in which Congress exercised its power to reach private conduct that infringes on rights otherwise assertable only against private conduct. This was made abundantly clear in the following passage in the Supreme Court's decision in *Scott:*

Neither is respondents' position helped by the assertion that even if the Fourteenth Amendment does not provide authority to proscribe exclusively private conspiracies, precisely the same conduct could be proscribed by the Commerce Clause. That is no doubt the case; but § 1985(3) is not such a provision, since it "provides no substantive rights itself" to the class conspired against. *Great*

*American Federal Savings & Loan Assn. v. Novotny,* 442 U.S. 366, 372 [99 S.Ct. 2345, 2349, 60 L.Ed.2d 957] (1979). The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere, and here the right claimed to have been infringed has its source in the First Amendment. Because that Amendment restrains only official conduct, to make out their § 1985(3) case, it was necessary for respondents to prove that the State was somehow involved in or affected by the conspiracy.

*Scott,* 463 U.S. at 833, 103 S.Ct. at 3358.

This court stated in *Bledsoe* that *Action* remained viable authority only for the proposition that Congress can reach certain private conduct under the enforcement clause. *Bledsoe,* 728 F.2d at 1097. *Bledsoe* did not state or imply that *Action* remained viable authority after *Scott* for the proposition that section 1985(3) can be used to redress private parties' violations of Fourteenth Amendment rights.[1] That proposition was completely discredited in *Scott* as the Court there made clear that section 1985(3) provides only a remedy for the violations of rights defined elsewhere. The right allegedly infringed in this case, Ms. Lewis' Fourteenth Amendment right to have an abortion within certain limits, is a right that protects her only against state interference and is thus assertable in a section 1985(3) action only if the state was involved in or affected by the conspiracy.

I believe that the majority opinion in this cases flies in the face of the fundamental principle, evident from the face of the Fourteenth Amendment itself, that the rights provided by that Amendment protect the individual only against state action. Congress can and in some instances has extended Fourteenth Amendment rights to protect against private conduct, but it did not do so in section 1985(3). I would affirm the judgment of the district court on the ground that Lewis has failed to allege state action, a required element of a claim based on the Due Process Clause of the Fourteenth Amendment.

---

1. *Bledsoe* did not even involve section 1985(3). In fact, the *Bledsoe* court distinguished section 1985(3) from the statute it was applying by stating: "The statute at issue in this case [18

U.S.C. § 245] is fundamentally different from section 1985(3) in that [§ 245] itself clearly creates a substantive right * * * *" *Bledsoe,* 728 F.2d at 1097.

328

I respectfully dissent.

## ORDER

Sept. 7, 1990.

Appellees' petition for rehearing with suggestion for rehearing en banc has been considered by the court and is granted. The opinion and judgment of this court filed on July 10, 1990, are vacated. The Clerk will notify the parties of the time and place of oral argument at a later date.